## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## SOUTHERN DIVISION

**JERRAD ELLSBERRY**                                                    **PLAINTIFF**

**VERSUS**                                **CIVIL ACTION NO. 1:21-cv-00385-BWR**

**CANDACE STEWART, et al.**                                           **DEFENDANTS**

### ORDER GRANTING IN PART AND DENYING IN PART
### MOTION [53] FOR SUMMARY JUDGMENT, DENYING MOTION [60]
### TO RULE IN FAVOR OF PLAINTIFF AGAINST JUSTIN MILES,
### GRANTING IN PART AND DENYING IN PART MOTION [46] TO DISMISS
### OR FOR SUMMARY JUDGMENT, AND DISMISSING CASE

This matter is before the Court on several dispositive motions and *sua sponte* for evaluation under 28 U.S.C. § 1915(e)(2). When he filed this lawsuit on December 2, 2021, Plaintiff Jerrad Ellsberry was a prisoner housed at the Stone County Correctional Facility in Wiggins, Mississippi. Compl. [1] at 2. Proceeding *pro se* and *in forma pauperis*, Ellsberry filed this civil action under 42 U.S.C. § 1983, naming Candace Stewart, Stone County Sheriff's Department, Homeland Security, *Stone County Enterprise*, Lyndy Berryhill,[1] Stone County, and Judge Justin Miles as Defendants. *Id*; Order [11]; Order [13].

At the Omnibus Hearing,[2] Ellsberry voluntarily dismissed Stone County Sheriff's Department and Homeland Security as Defendants. Notice [28]. The *Enterprise* and Berryhill ("the *Enterprise* Defendants") then filed a Motion to Dismiss

---

[1] Ellsberry named "Lynda Berryhill" in his Complaint, Compl. [1] at 2, but she advised the Court about the correct spelling of her name, Mot. [46] at 1.

[2] The Court held an Omnibus Hearing on September 27, 2022, to give Ellsberry a chance to clarify his claims. *See Spears v. McCotter*, 766 F.2d 179, 181-82 (5th Cir. 1985) (authorizing the magistrate judge to "hold an evidentiary hearing" to allow a *pro se* plaintiff to provide a "more definite statement"), *abrogated on other grounds by Neitzke v. Williams*, 490 U.S. 319, 324 n.3 (1989).

for Lack of Subject Matter Jurisdiction or in the Alternative to Dismiss for Failure to Comply with Miss. Code Ann. § 95-1-5 or for Summary Judgment.  Mot. [46]; Mem. [47].  Deputy Stewart and Stone County ("the County Defendants") also filed a Motion for Summary Judgment.  Mot. [53]; Mem. [54].  Ellsberry responded to both Motions, Resp. [56] [61] [68] [72], and filed a Motion [60] to Rule in Favor of Plaintiff Against Justin Miles.  For the following reasons, the Court finds that the Motion [53] filed by the County Defendants should be granted in part and denied in part, the Motion [60] filed by Ellsberry should be denied, and the Motion [46] filed by the *Enterprise* Defendants should be granted in part and denied in part.  This case should be dismissed, and all other outstanding motions should be denied as moot.

## I.   BACKGROUND

Ellsberry was convicted in 2013 for possessing a controlled substance.  Mot. [53-5] at 15-16.  He was sentenced by the Stone County Circuit Court to serve an eight-year term of incarceration, followed by a three-year term of probation.  *Id*. at 30-31.  He was released to his term of probation on July 6, 2021.  *Id*. at 17.

On August 31, 2021, Stone County Justice Court Judge Miles signed an arrest warrant for Ellsberry to answer the charge of "obscene electronic communications" under Mississippi Code § 97-29-45.  Mot. [53-1] at 3.  According to an incident report filed with the Stone County Sheriff's Department on August 18, 2021, Ellsberry met with his ex-girlfriend on July 7, 2021, at Walmart in Wiggins.  *Id*. at 4.  Because Ellsberry had not "been keeping himself clean off drugs," his ex-girlfriend informed

him that he "could not be around" their child.  *Id.*  After their meeting, Ellsberry left

her a voicemail "stating that he was thinking about killing her and her mother."  *Id.*

Deputy Greg Hayes listened to the voicemail and confirmed its contents.  *Id.*

Ellsberry denies meeting his ex-girlfriend at Walmart, Resp. [61] at 1, but does not

dispute that he left the voicemail, Resp. [68] at 1.

Shortly thereafter, Deputy Stewart went to Ellsberry's home to execute the

arrest warrant.  Mot. [53-3] at 7.  She found him in possession of "a clear plastic bag

that contained a white powdery looking substance, another plastic bag containing a

crystal like substance, and a plastic bag containing a green leafy substance."  Mot.

[53-6] at 3.  "The substances field [tested] positive for methamphetamine and

marijuana."  *Id.*  Inside the home, officers found evidence that methamphetamine

"was being made and cooked at the residence," along with "multiple firearms."  *Id.*

Ellsberry was arrested for (1) manufacturing a controlled substance, (2)

possession of a firearm by a convicted felon, (3) sale of a controlled substance, (4)

production of hazardous waste, and (5) telephone harassment.  *See* Mot. [53-1] at 1;

Mot. [53-5] at 14.  He appeared in court on November 8, 2021, for a probation-

revocation hearing.  At that hearing, Deputy Stewart testified that she witnessed

Ellsberry possessing drug paraphernalia before his arrest.  Mot. [53-3] at 10.

Ellsberry insists that her testimony was false, though he admits being in possession

of methamphetamine at the time.  Mot. [53-5] at 46 ("I did have some meth in my

pocket.").  After the hearing, Presiding Judge Lawrence Bourgeois found "that a crime

3

has been committed and it's more likely than not that [Ellsberry] committed the crime." Mot. [53-3] at 24.

Ellsberry's probation was revoked, and he was sentenced to serve the remainder of his three-year sentence in the custody of the Mississippi Department of Corrections. Mot. [53-4]. He says that this probation revocation has rendered him ineligible for parole, and he advised the Court that the charges pressed on August 31 were ultimately "dismissed." Mot. [53-5] at 10. On September 1, 2021, Judge Miles conducted an initial appearance on the charges of manufacturing a controlled substance, possession of a firearm by a convicted felon, sale of a controlled substance, and production of hazardous waste and set Ellsberry's bond at $160,000.00. Mot. [53-7] at 1.

Ellsberry laments many abnormalities with the procedure surrounding his arrest and the arrest itself. For example, he says that Deputy Stewart "back dated" a search warrant, which Judge Miles signed. Mot. [53-5] at 41. Ellsberry insists that the warrant mentioned a "brick house" when it was executed but that later copies mentioned a "mobile home." *Id.* at 9. Also, Ellsberry insists that no arrest warrant for "telephone harassment" was ever issued. *Id.* at 29. Ellsberry sues Deputy Stewart and Stone County for illegal arrest and unlawful incarceration. *Id.* at 24, 42. To that, he adds allegations of perjury against Deputy Stewart. *Id.* at 24.

On September 8, 2021, the *Stone County Enterprise*, a weekly newspaper, published an article about Ellsberry's arrest. Mot. [46-1] at 2. Berryhill wrote the

4

article. *Id*. Ellsberry maintains claims sounding in slander and defamation against the *Enterprise* Defendants. Mot. [53-5] at 44-45. Ellsberry admits that he was not physically injured. *Id*. at 23-24. For damages, Ellsberry claims embarrassment to himself and his family, emotional distress, deprivation of the enjoyment of life, and the inability to find work because of reputational injury.

## II.   STANDARDS OF REVIEW

### A. Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(1), parties may challenge the Court's subject-matter jurisdiction to hear a case. "Lack of subject matter jurisdiction may be found in any one of three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). The party asserting jurisdiction "constantly bears the burden of proof that jurisdiction does in fact exist." *Id*. "When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Id*.

"Motions to dismiss for failure to state a claim are appropriate when a defendant attacks the complaint because it fails to state a legally cognizable claim." *Id*. (citing FED. R. CIV. P. 12(b)(6)). A Rule 12(b)(6) motion "admits the facts alleged in the complaint, but challenges plaintiff's rights to relief based upon those facts." *Id*.

at 162 (quotation omitted).  Both Rule 12(b)(1) and Rule 12(b)(6) motions ultimately succeed where it appears beyond doubt that a plaintiff can prove no set of facts in support of his claim that would entitle him to relief.  *Id.* at 161.

## B. Federal Rule of Civil Procedure 56

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  "A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Westfall v. Luna*, 903 F.3d 534, 546 (5th Cir. 2018) (quotation omitted).  "An issue is material if its resolution could affect the outcome of the action." *Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010) (quotation omitted).  "On a motion for summary judgment, the court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *E.E.O.C. v. WC&M Enters., Inc.*, 496 F.3d 393, 397 (5th Cir. 2007).

"Summary judgment is proper if the movant demonstrates that there is an absence of genuine issues of material fact." *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992).  "The movant accomplishes this by informing the court of the basis for its motion, and by identifying portions of the record which highlight the absence of genuine factual issues." *Id.*  "Rule 56 contemplates a shifting burden: the nonmovant is under no obligation to respond unless the movant discharges its initial burden of demonstrating entitlement to summary judgment." *Mack v. Waffle House,*

*Inc.*, No. 1:06-cv-00559-RHW, 2007 WL 1153116, at *1 (S.D. Miss. Apr. 18, 2007) (quotation and brackets omitted).  "[O]nce a properly supported motion for summary judgment is presented, the nonmoving party must rebut with 'significant probative' evidence." *Id.* (quoting *Ferguson v. Nat'l Broad. Co., Inc.*, 584 F.2d 111, 114 (5th Cir. 1978)).

## III.   DISCUSSION

This case ultimately reduces to a jurisdictional question, so the Court will not address the dispositive motions in the order of filing.  Instead, the Court will first address Ellsberry's claims against the County Defendants, followed by his claims against Judge Miles, and ending with his claims against the *Enterprise* Defendants.

The Court's subject-matter jurisdiction is predicated on the federal question raised in Ellsberry's Complaint—namely, his 42 U.S.C. § 1983 claims against the County Defendants and Judge Miles.  As discussed below, the Court dismisses the claims against the County Defendants and Judge Miles with prejudice, leaving the Court without original subject-matter jurisdiction to hear Ellsberry's state-law claims against the *Enterprise* Defendants.  The Court will decline to exercise supplemental jurisdiction over the remaining claims and will therefore dismiss this case entirely. Therefore, all outstanding motions will be denied as moot.

### A. The Motion [53] for Summary Judgment filed by the County Defendants should be granted in part and denied in part.

The County Defendants offer a litany of reasons that Ellsberry's claims against them should be dismissed.  To start, Deputy Stewart argues that she is entitled to

judgment as a matter of law because she is shielded by qualified and absolute immunity. Mem. [54] at 4-11. Next, Stone County argues that it is entitled to judgment as a matter of law because Ellsberry has not proven a policy, practice, or custom of Stone County to support the imposition of municipal liability. *Id.* at 11-14. Together, they argue that Ellsberry's claims are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). *Id.* at 14-17. Finally, they argue that Ellsberry has not exhausted his administrative remedies, that he did not suffer the requisite physical injury under the Prison Litigation Reform Act ("PLRA"), and that any state-law claims do not pass muster. *Id.* at 17-23. Because the Court accepts the first three arguments, which are dispositive, it declines to address the final three. Ellsberry's claims against the County Defendants will be dismissed with prejudice.

### i.    *Immunity for Deputy Stewart*

As discussed below, Deputy Stewart enjoys qualified immunity from Ellsberry's unlawful-arrest and unlawful-incarceration claims. She enjoys absolute immunity from his perjury claims.

When Deputy Stewart invoked qualified immunity, "the burden shift[ed] to [Ellsberry] to show [that she] violated his clearly established rights." *See Templeton v. Jarmillo*, 28 F.4th 618, 621 (5th Cir. 2022). That is, to overcome the defense of qualified immunity, Ellsberry must allege facts to show that Deputy Stewart "(1) violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *See id.* (quotation and alterations

omitted).  The Court may "address either prong of the qualified immunity inquiry first."  *Keller v. Fleming*, 952 F.3d 216, 221 (5th Cir. 2020).  The Court finds that Deputy Stewart did not violate Ellsberry's statutory or constitutional rights, so this analysis stops there.

Deputy Stewart is immune from Ellsberry's unlawful-arrest claim because she arrested him pursuant to a valid arrest warrant (Mot. [53-1] at 3), and she otherwise had probable cause to make the arrest.  It is well-settled that "an arrest made pursuant to a properly issued, facially valid warrant . . . is simply not a false arrest." *Ray v. City of Gulfport Police Dep't*, No. 1:10-cv-00572-HSO-JMR, 2011 WL 7556643, at *2 (S.D. Miss. Nov. 23, 2011), *report and recommendation adopted by* 2012 WL 926128, at *1 (S.D. Miss. Mar. 16, 2012).  Ellsberry maintains that the arrest warrant identified the wrong charge, Mot. [53-5] at 40, but qualified immunity is available even where an arrest is made pursuant to a valid warrant that contains material errors, *e.g.*, *Kugle v. Shields*, 62 F.3d 395, at *3 (5th Cir. 1995) ("Even if the arrest warrant was constitutionally defective, an officer executing the warrant is entitled to qualified immunity if the warrant is regular on its face and the officer does not act in bad faith or with notice of an infirmity of the warrant.").  Beyond Ellsberry's conclusory allegations, Resp. [68] at 1, there is no evidence that Deputy Stewart procured the arrest warrant by deception or otherwise had notice of an infirmity of the warrant.  *See Liddell v. Northrop Grumman Shipbuilding, Inc.*, 836 F. Supp. 2d 443, 449 (S.D. Miss. 2011) ("[M]ere conclusory allegations are not competent

summary judgment evidence, and such allegations are insufficient . . . to defeat a motion for summary judgment.").

Moreover, Ellsberry admittedly possessed methamphetamine at the time of his arrest, Mot. [53-5] at 46, and the officers on the scene saw the drugs in his possession, Mot. [53-6] at 3.  Independent of the arrest warrant, Deputy Stewart had sufficient probable cause to justify his arrest.  *See Mangieri v. Clifton*, 29 F.3d 1012, 1016 (5th Cir. 1994) ("For warrantless arrests, the test for whether the police officer had probable cause to arrest is if, at the time of the arrest, [s]he had knowledge that would warrant a prudent person's belief that the person arrested had already committed or was committing a crime.") (quotation and alterations omitted).  She is entitled to qualified immunity on Ellsberry's false-arrest claim.  *See Middleton v. Leggett*, No. 3:10-cv-00373-HTW-FKB, 2012 WL 4583937, at *2 (S.D. Miss. Sept. 13, 2012) ("[T]o overcome qualified immunity and prevail on a Section 1983 claim for false arrest, Plaintiff must demonstrate that he was arrested without probable cause."), *report and recommendation adopted by* 2012 WL 4596536, at *1 (S.D. Miss. Sept. 29, 2012).

Deputy Stewart is immune from Ellsberry's unlawful-incarceration claim for the same reason.  "To establish a constitutional violation for 'false imprisonment,' a plaintiff must show that the defendant lacked probable cause to arrest him."  *Felter v. Brown*, No. 5:11-cv-00046-DCB-RHW, 2013 WL 5503720, at *6 (S.D. Miss. Oct. 2, 2013); *see also Brown v. Lyford*, 243 F.3d 185, 189 (5th Cir. 2001) ("The constitutional torts of false arrest . . . and false imprisonment . . . require a showing of no probable

cause." (quotation omitted)). Because Deputy Stewart had probable cause to arrest Ellsberry, she is entitled to qualified immunity on his unlawful-incarceration claim too. *See id*.

Finally, Deputy Stewart is absolutely immune from Ellsberry's perjury allegations under § 1983.[3] The Supreme Court has held that a police officer is absolutely immune from perjury claims for damages arising under § 1983 based on their testimony in a criminal trial. *Briscoe v. LaHue*, 460 U.S. 325, 326 (1983). The United States Court of Appeals for the Fifth Circuit extended that immunity to cover testimony given during a pretrial suppression hearing—reasoning that such hearings are adversarial in nature, the testimony is given under oath before a judge on the record, the witness is subject to cross-examination, and the witness faces the penalty of criminal charges for false testimony. *Moore v. McDonald*, 30 F.3d 616, 620 (5th Cir. 1994).

The same reasoning applies here. Deputy Stewart's testimony at issue was given at a probation-revocation hearing. Mot. [53-3]. She appeared before Judge Bourgeois, was duly sworn, offered testimony on the record, and was subject to cross-examination by Ellsberry's attorney. "Because [Deputy Stewart's] testimony at the [revocation] hearing was subject to the same procedural safeguards as trial

---

[3] Deputy Stewart did not raise absolute immunity as a reason for dismissing Ellsberry's perjury claim against her. *See* Mot. [53] at 11. But Ellsberry is proceeding *in forma pauperis*, Order [8], and his claims are subject to *sua sponte* dismissal under 28 U.S.C. § 1915(e)(2). *See, e.g.*, *Smith v. Anderson*, No. 2:11-cv-00221-KS-MTP, 2013 WL 1182995, at *1 (S.D. Miss. Feb. 13, 2013) (dismissing a case based on a motion for summary judgment and a "*sua sponte* . . . evaluation pursuant to 28 U.S.C. § 1915(e)(2)"), *report and recommendation adopted by* 2013 WL 1182984, at *1 (S.D. Miss. Mar. 21, 2013).

testimony," she is absolutely immune to Ellsberry's perjury allegations under § 1983. *See Moore*, 30 F.3d at 620; *see also Jackson v. Hutcherson*, No. 1:18-cv-00110-LJA-TQL, 2018 WL 9414022, at *3 (M.D. Ga. Sept. 26, 2018) (affording absolute immunity to a police officer for his testimony during a probation-revocation hearing); *Johnson v. Kelsh*, 664 F. Supp. 162, 166 (S.D.N.Y. 1987) ("Subjecting an arresting officer to damages liability for [her] testimony in a parole revocation hearing could limit the effective performance of [her] duties and limit [her] contribution in the revocation determination proceeding."). Ellsberry's claims against Deputy Stewart must be dismissed with prejudice.

### ii. *Municipal Liability for Stone County*

Stone County argues that Ellsberry has failed to allege an official "policy, practice, or custom" that was responsible for the alleged constitutional violations against him. Mem. [54] at 11. "Municipal liability under Section 1983 requires that a plaintiff prove three elements: 'a policymaker; an official policy; and a violation of constitutional rights whose "moving force" is the policy or custom.'" *Ducksworth v. Rook*, No. 2:14-cv-00146-KS-MTP, 2015 WL 737574, at *2 (S.D. Miss. Feb. 20, 2015) (quoting *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)). A "policy or custom" can be either:

> (1) a policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or (2) a persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a

custom that fairly represents municipal policy.

*Felter v. Brown*, No. 5:11-cv-00046-DCB-MTP, 2014 WL 51335, at *2 (S.D. Miss. Jan. 7, 2014) (citing *McGregory v. City of Jackson*, 335 F. App'x 446, 448-49 (5th Cir. 2009)).  To advance beyond the pleading stage, a complaint's "description of a policy or custom and its relationship to the underlying constitutional violation cannot be conclusory; it must contain specific facts."  *Pena v. City of Rio Grande City*, 879 F.3d 613, 622 (5th Cir. 2018) (quotation and alterations omitted).

Ellsberry has failed to allege sufficient facts to maintain this action against Stone County.  When asked to explain how Stone County violated his constitutional rights, Order [9] at 1, Ellsberry identified "discrimination, false imprisonment, [defamation] of character, deni[al] [of] access to help, research, [and] communication," Resp. [10] at 1.  In his summary-judgment response, Ellsberry elaborated: "Stone County continued to illegally hold [him] after [his false arrest was] brought to light." Resp. [68] at 1.  At the Omnibus Hearing, Ellsberry advised that he sued Stone County because it "employed Candace Stewart" and "held [him] in the jail until [he] was sent to prison, which . . . with the illegal arrest, they illegally detained [him] in their jail."  At no point does Ellsberry allege that Stone County has an official policy or well-settled custom of harassment, wrongful arrest, or wrongful incarceration.  His allegations merely represent what he says happened to him in one instance.

Put differently, Ellsberry has "alleged no specific policy statement, ordinance, regulation, or decision that was the moving force" behind the alleged constitutional

violations.  *See Ducksworth*, 2015 WL 737574, at *2.  His pleadings and testimony thus fail "to include sufficient facts to allow the Court to infer a persistent, widespread practice so common and well-settled as to constitute a custom that fairly represents a municipal policy."  *See id*. (quotations and alterations omitted); *see also Lang v. Forrest Cnty. Adult Det. Ctr.*, No. 2:21-cv-000821-HSO-JCG, 2021 WL 4432824, at *2 (S.D. Miss. Sept. 27, 2021) (dismissing claims against Forrest County because the plaintiff failed to allege the existence of an official policy, practice, or custom); *Handshaw v. Biloxi Police Dep't*, No. 1:19-cv-00821-HSO-JCG, 2020 WL 592338, at *2 (S.D. Miss. Feb. 6, 2020) (dismissing claims against the City of Biloxi for the same reason); *Cobb v. Adams Cnty.*, No. 5:07-cv-00198-MTP, 2009 WL 799461, at *3 (S.D. Miss. Mar. 24, 2009) (dismissing claims against Adams County for the same reason).  Ellsberry's claims against Stone County must be dismissed with prejudice.

### iii.    Heck *Bar*

The County Defendants next argue that Ellsberry's claims are barred by *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994).  Mem. [54] at 16.  "In *Heck*, the Supreme Court held that if a plaintiff's civil rights claim for damages challenges the validity of his criminal conviction or sentence, and the plaintiff cannot show that such conviction or sentence has been reversed, invalidated, or otherwise set aside, the claim is not cognizable under § 1983."  *Magee v. Reed*, 912 F.3d 820, 822 (5th Cir. 2019) (citing *Heck*, 512 U.S. at 486-87).  "*Heck* requires the district court to consider

'whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.'" *Ballard v. Burton*, 444 F.3d 391, 396 (5th Cir. 2006) (quoting *Jackson v. Vannoy*, 49 F.3d 175, 177 (5th Cir. 1995)). "This requirement or limitation has become known as the favorable termination rule." *Id.* (quotation omitted). *Heck* applies with equal force to "claims that challenge revocation proceedings." *Adongo v. Tex.*, 124 F. App'x 230, 232 (5th Cir. 2005); *see also Jackson*, 49 F.3d at 177.

Ellsberry asks this Court to conclude that his August 31 arrest and the subsequent revocation of his parole were illegal and unconstitutional. But success on his unlawful-arrest and unlawful-imprisonment claims would necessarily imply the invalidity of the underlying revocation proceedings and any term of imprisonment resulting from them. *See Walker v. City of Gulfport*, No. 1:13-cv-00331-LG-JCG, 2014 WL 12649008, at *5 (S.D. Miss. Nov. 24, 2014) (applying *Heck* to false-arrest and false-imprisonment claims). And Ellsberry has not alleged that his revocation and subsequent incarceration were since "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254." *Heck*, 512 U.S. at 487. In fact, Ellsberry only recently filed a petition for writ of habeas corpus, alleging that his "probation was revoked based solely on perjured testimony." *Ellsberry v. Miss. Dep't of Corr.*, No. 1:23-cv-00039-

HSO-BWR (S.D. Miss. Feb. 13, 2023) (Doc. 1 at 5). Thus, Ellsberry's false-arrest and false-imprisonment claims against the County Defendants must separately be dismissed with prejudice until the *Heck* conditions are met. *See Johnson v. McElveen*, 101 F.3d 423, 424 (5th Cir. 1996) (directing that *Heck*-barred claims should be "dismissed with prejudice to their being asserted again until the *Heck* conditions are met").

## B. The Motion [60] to Rule in Favor of Plaintiff Against Justin Miles should be denied.

Ellsberry asks the Court "to rule in [his] favor on [the] claims against [Judge Miles]." Mot. [60] at 1. Ellsberry claims that Justice Court Judge Miles "knowingly signed a falsified and back-dated search warrant" based on Deputy Stewart's perjured testimony. Resp. [12] at 2. Ellsberry claims that, in doing so, Judge Miles violated his Fourth Amendment rights. Mot. [53-5] at 28.

"As a general matter, judicial immunity protects a judge from liability for acts or omissions done in the exercise of his judicial function or capacity within the limits of his jurisdiction." *Lang v. City of Gulfport*, No. 1:13-cv-00012-LG-JMR, 2013 WL 3095058, at *2 (S.D. Miss. June 18, 2013). "Judicial immunity is an immunity from suit and not just from the ultimate assessment of damages." *Ballard v. Wall*, 413 F.3d 510, 515 (5th Cir. 2005). "Accordingly, judicial immunity is not overcome by allegations of bad faith or malice, the existence of which ordinarily cannot be resolved without engaging in discovery and eventual trial." *Mireles v. Waco*, 502 U.S. 9, 11 (1991). "A judge will not be deprived of immunity because the action he took was in

error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the clear absence of all jurisdiction." *Stump v. Sparkman*, 435 U.S. 349, 356-57 (1978) (quotation omitted).

"The doctrine of judicial immunity can be overcome under two sets of circumstances: (i) nonjudicial actions, which are actions not taken in the judge's judicial capacity and (ii) actions taken in the complete absence of all jurisdiction, even though they are judicial in nature." *Lang*, 2013 WL 3095058, at *2 (citing *Ballard*, 413 F.3d at 515). Ellsberry's allegations against Judge Miles satisfy neither exception.

"A judge's acts are judicial in nature if they are normally performed by a judge and the parties affected dealt with the judge in his judicial capacity." *Boyd v. Biggers*, 31 F.3d 279, 285 (5th Cir. 1994) (quotation and alterations omitted). "The signing of a search warrant is without question a judicial function." *Brown v. Lee*, No. 3:19-cv-00033-HTW-LRA, 2021 WL 1561257, at *3 (S.D. Miss. Mar. 29, 2021). Ellsberry does not argue otherwise, nor does he complain that Judge Miles acted outside his judicial capacity. What's more, Ellsberry does not allege that Judge Miles lacked jurisdiction to issue the warrant—only that the warrant was "falsified and back-dated." Resp. [12] at 2. Mississippi law empowers justice court judges to sign search warrants. *E.g.*, MISS. CODE. ANN. § 41-29-157(a)(1)-(2). Judge Miles thus acted within his jurisdiction by signing the search warrant at issue, and he is entitled to judicial immunity from suit. Ellsberry's claims against Judge Miles must be dismissed with

17

prejudice.

### C. The Motion [46] to Dismiss or for Summary Judgment filed by the *Enterprise* Defendants should be granted in part and denied in part.

Finally, the *Enterprise* Defendants made three arguments about why the Court should dismiss the claims against them. First, they argue that the Court lacks subject-matter jurisdiction to hear Ellsberry's claims against them. Mem. [47] at 3-7. Second, and alternatively, they argue that Ellsberry failed to satisfy Mississippi's statutory notice requirements before filing this lawsuit against a media entity. *Id*. at 7-8. Third, they argue that they are entitled to judgment as a matter of law because Ellsberry cannot establish that they acted with actual malice in printing the story about his August 31 arrest. *Id*. at 9-12. After reviewing the Motion [46] and Ellsberry's Response [68], the Court finds that it lacks original subject-matter jurisdiction to hear Ellsberry's claims against the *Enterprise* Defendants, and it declines to exercise supplemental jurisdiction over those claims. Thus, the Court will not resolve the alternative arguments advanced by the *Enterprise* Defendants. *See Ramming*, 281 F.3d at 161 (cautioning "court[s] without jurisdiction from prematurely dismissing a case with prejudice").

"Federal courts are courts of limited jurisdiction." *Attia v. Martin*, No. 1:21-cv-00090-LG-JCG, 2021 WL 3046890, at *2 (S.D. Miss. June 9, 2021). Unlike state courts, a federal court has no inherent or general subject-matter jurisdiction. *Id*. "Instead, federal courts can adjudicate only those cases which the Constitution and Congress authorize them to adjudicate: Those involving diversity of citizenship, a

federal question, or where the United States is a party to an action." *Id.* (citing *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994)). Since the United States is not a party to this lawsuit, Ellsberry must invoke either federal-question jurisdiction under 28 U.S.C. § 1331 or diversity-of-citizenship jurisdiction under 28 U.S.C. § 1332 to pursue his claims.

As previously noted, Ellsberry's Complaint presents federal-question claims against the County Defendants and Judge Miles. But Ellsberry's claims against the *Enterprise* Defendants arise under state law. *See Owens v. Owens*, No. 3:17-cv-00037-NBB-JMV, 2017 WL 1450511, at *2 (N.D. Miss. Apr. 4, 2017) (noting that "slander and defamation are purely state law matters"), *report and recommendation adopted by* 2017 WL 1450509, at *1 (N.D. Miss. Apr. 20, 2017). And he has failed to allege complete diversity between the parties; Ellsberry listed Wiggins, Mississippi, for both his residence and the addresses of the *Enterprise* Defendants. Compl. [1] at 2. The Court thus has no authority to exercise original subject-matter jurisdiction over Ellsberry's claims against the *Enterprise* Defendants. And Ellsberry does not argue otherwise. Resp. [68] at 2.

Instead, Ellsberry apparently invokes the Court's supplemental jurisdiction: "My claim against the Stone County Enterprise newspaper and reporter has the same evidence and is directly linked to my criminal case and the violation of my Constitutional and Civil Rights." *Id.* But the Court may decline to exercise supplemental jurisdiction where "the district court has dismissed all claims over

which it has original jurisdiction."  28 U.S.C. § 1367(c)(3).  As discussed *supra*, the Court will dismiss all claims over which it has federal-question jurisdiction—*i.e.*, Ellsberry's claims against the County Defendants and Judge Miles.  For this reason, the Court will decline to exercise supplemental jurisdiction over Ellsberry's claims against the *Enterprise* Defendants and will dismiss all claims against them without prejudice.  A state court is in a better position to adjudicate Ellsberry's claims arising under state law.  *See Cook v. Houston Post*, 616 F.2d 791, 794 (5th Cir. 1980) ("Appellant's interest with . . . libel and slander are matters which the State protects by virtue of its tort law, providing a forum for those interests by means of damage actions.").

## IV.    CONCLUSION

Having thoroughly reviewed and liberally construed Ellsberry's pleadings and testimony, along with the Motions [46] [53] [60] and Responses [56] [61] [68] [72] presently pending, the Court finds that the County Defendants' Motion [53] should be granted in part and denied in part, Ellsberry's Motion [60] should be denied, and the *Enterprise* Defendants' Motion [46] should be granted in part and denied in part. This case should be dismissed, and all other outstanding motions should be denied as moot.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that the Motion [53] for Summary Judgment filed by Defendants Candace Stewart and Stone County is **GRANTED IN PART AND DENIED IN PART**.  Ellsberry's claims against the

20

County Defendants are **DISMISSED WITH PREJUDICE**.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that the Motion [60] to Rule in Favor of Plaintiff Against Justin Miles filed by Plaintiff Jerrad Ellsberry is **DENIED**.   Ellsberry's claims against Judge Miles are **DISMISSED WITH PREJUDICE**.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that the Motion [46] to Dismiss for Lack of Subject Matter Jurisdiction or in the Alternative to Dismiss for Failure to Comply with Miss. Code Ann. § 95-1-5 or for Summary Judgment filed by Defendants the *Stone County Enterprise* and Lyndy Berryhill is **GRANTED IN PART AND DENIED IN PART**.   Ellsberry's claims against the *Enterprise* Defendants are **DISMISSED WITHOUT PREJUDICE**.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that this case is **DISMISSED**.  Any arguments raised by the parties but not specifically discussed herein were considered by the Court and would not change the final disposition of this case.  A separate final judgment will be entered under Federal Rule of Civil Procedure 58.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that all other outstanding motions are **DENIED AS MOOT**.

**SO ORDERED AND ADJUDGED,** this 6th day of March, 2023.

s/ *Bradley W. Rath*

BRADLEY W. RATH
UNITED STATES MAGISTRATE JUDGE

21